## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

JOHN WILLIAMS,

                    Plaintiff,

          v.

JASON BLACK *et al.*,

                    Defendants.

Case No. 2:20-cv-04300-PSG (MAA)

**MEMORANDUM DECISION AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**

## I.    INTRODUCTION

On May 12, 2020, Plaintiff John Williams ("Plaintiff"), a California state inmate proceeding *pro se*, filed a Complaint alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983").  (Compl., ECF No. 1.)  After the Court denied Plaintiff's requests to proceed *in forma pauperis*, Plaintiff fully paid his filing fee on August 6, 2020.  (ECF Nos. 6, 14.)

The Court has screened the Complaint as prescribed by 28 U.S.C. § 1915A. For the reasons stated below, the Complaint is **DISMISSED WITH LEAVE TO AMEND**.  Plaintiff is **ORDERED** to, within sixty days after the date of this Order, either:  (1) file a First Amended Complaint ("FAC"); or (2) advise the Court that Plaintiff does not intend to pursue this lawsuit further and will not file a FAC.

## II.   SUMMARY OF ALLEGATIONS IN COMPLAINT[1]

The Complaint is filed against:  (1) Jason Black, Executive Director of Atascadero State Hospital ("ASH"); (2) James Sanchez, Unit Supervisor at ASH; (3) Miller, psychiatrist at ASH; (4) A. Martinez, psychologist at ASH; (5) S. Wenkler, clinic social worker at ASH; (6) and Carlee, psychiatric technician at ASH (each, a "Defendant," and collectively, "Defendants").  (Compl., at 2–4.)[2]  Each Defendant is sued in his or her individual and official capacities.  (*Id*.)

Throughout all times mentioned in the Complaint, Plaintiff was a participant in the California Department Corrections and Rehabilitation ("CDCR") mental health services delivery system ("MHSDS") at the psychiatric inpatient program ("PIP"), as well as the California Department of State Hospitals ("DSH") level of care.  (*Id*., at 5.)  As a MHSDS participant, Plaintiff is diagnosed as, and is being treated for, "cutting disorder," also known as "self-injurious behavior" ("SIB").  Plaintiff does not cut with suicidal intent, but rather to relieve anger, stress, anxiety, and frustration.  (*Id*.)

Between September and December 2019, Plaintiff was in the PIP at California Health Care Facility under the MHSDS level of care with psychologist Dr. Makenzee.  (*Id*., at 6.)  Dr. Makenzee concluded that unresolved childhood trauma created "PTSD symptoms" in Plaintiff's adult life, which resulted in SIB.  (*Id*.)  Around November 2019, Dr. Makenzee initiated a referral for Plaintiff to receive a higher level of MHSDS care—from PIP to a DSH—for childhood trauma and PTSD therapy treatment.  (*Id*.)

///

---

[1] The Court summarizes the allegations and claims in the Complaint.  In doing so, the Court does not opine on the veracity or merit of Plaintiff's allegations and claims, nor does the Court make any findings of fact.

[2] Citations to pages in docketed documents reference those generated by CM/ECF.

On or about December 12, 2019, Plaintiff was transferred to ASH, and was housed in a unit supervised by Defendant Sanchez. (*Id*.) Plaintiff was under the MHSDS care of Defendants Miller, Martinez, and Wenkler, whom he met on December 23, 2019 to formulate a treatment plan. (*Id*.) Defendants Miller, Martinez, and Wenkler enrolled Plaintiff in therapy groups for childhood trauma and PTSD, but advised that there was a four- to eight-week wait list before Plaintiff could attend, and that in the interim, Plaintiff would be enrolled in other available temporary groups. (*Id*., at 6–7.) Plaintiff was admonished that ASH had "zero tolerance" for fighting, and, while ASH patients were expected to protect themselves, instigating or aggressive fighting would result in immediate discharge back to prison. (*Id*.)

Between July to December 2019, ASH patient Melecio Jiminez established a "pattern and practice" of assaulting random patients in Plaintiff's unit from behind with punches to the head and face without warning. (*Id*.) In December 2019, Mr. Jiminez attacked ASH patient Mr. McCoy. (*Id*.) In response, Defendants Sanchez, Miller, Martinez, Wenkler, and Carlee isolated Mr. Jiminez, administered psychiatric medications, placed Mr. Jiminez on "one to one" twenty-hour observation by a "PT" or registered nurse, and re-housed Mr. Jiminez in a room with Plaintiff and two other ASH patients. (*Id*., at 7–8.) The whole time Mr. Jiminez was in isolation, he yelled to Defendants Sanchez, Miller, Martinez, Wenkler, and Carlee of his intent to "keep on" attacking ASH patients based on the pattern and practice described, which Defendants ignored. (*Id*., at 8.)

On or about January 14, 2020, Mr. Jiminez attacked ASH patient Mr. Contrell. (*Id*.) While in isolation, Mr. Jiminez again made clear to Defendants Sanchez, Miller, Martinez, Wenkler, and Carlee of his intent to "keep on" attacking ASH patients based on the pattern and practice described. (*Id*.) Although Mr. Contrell was Mr. Jiminez's fifth or sixth victim, Defendants Sanchez, Miller, Martinez, Wenkler, and Carlee continued to ignore him. (*Id*.)

On January 17, 2020, Mr. Jiminez came from behind Plaintiff without warning or provocation while on "one on one," and punched Plaintiff in the right temple above the eye with a closed fist. (*Id*.) Mr. Jiminez persisted with repeated punches as the PT maintaining the "one on one" on Mr. Jiminez screamed. (*Id*.) During the attack, Mr. Jiminez eventually fell, which allowed Plaintiff to hold Mr. Jiminez down for a minute until responding staff came to take Mr. Jiminez to the isolation room. (*Id*., at 9.) Plaintiff suffered a bruised head above the right temple, a severe reddened right eye that pained him for days when looking right, and spontaneous daily headaches for two weeks. (*Id*.)

As soon as Mr. Jiminez was secured, Defendant Carlee came into the dayroom where Plaintiff was and said "I'm so sorry you were assaulted, [sic] we had no other place to put him so we housed him in your dorm because you look as if you can handle yourself." (*Id*.) Plaintiff responded, "What do you mean I look as if I can handle myself, [sic] it sounds like you know this was gonna happen." (*Id*.) Defendant Carlee said "Let's go in here," and led Plaintiff into the adjoining locker room which serves as a quiet room. (*Id*.) Defendant Carlee then said, "I don't know if you've heard but Jiminez has attacked several other patients the same way. Your [sic] like the fifth or sixth [sic] one, but we didn't expect him to try his M.O. on you because of your size. We've been waiting on CDCR transportation to come take him back to prison but we don't control the bus schedule." (*Id*., at 9–10.) Plaintiff advised Defendant Carlee that he was interested in filing a patient complaint. (*Id*., at 10.) Defendant Carlee responded, "You have been doing really good here, [sic] don't let this mess up your program, [sic] let us handle this." (*Id*.)

Plaintiff persisted on requesting a patient complaint. (*Id*.) One of the responding PTs from another unit gave Plaintiff a complaint form, encouraged Plaintiff to pursue it, and told Plaintiff to include in his grievance that Mr. Jiminez had been allowed to attack five other ASH patients before Plaintiff. (*Id*.) Plaintiff deposited a grievance in the designated complaint box on January 18, 2020. (*Id*.)

4

On January 21, 2020, Plaintiff called the ASH patient rights advocate to report the attack, including that Mr. Jiminez had been released from the seclusion room and was "on the prowl" while on "one on one." (*Id*., at 10–11.)

On January 21, 2020, Defendant Wenkler interviewed Plaintiff in response to messages received from ASH patient rights advocates and Plaintiff's mother regarding the attack. (*Id*., at 11.) Defendant Wenkler asked Plaintiff why he filed a patient complaint against him and the team (Defendants Sanchez, Miller, Martinez, and Carlee). (*Id*.) Plaintiff responded, "You guys have a legal duty to ensure every patient on this unit [sic] safety, not just me." (*Id*.) Defendant Wenkler said, "Well, Carlee mentioned in the meeting that before you filed your complaint, she told you we'd take care of it, [sic] why didn't that work for you without the complaint?" (*Id*.)

Plaintiff "stood" on the right to file a grievance and told Defendant Wenkler that he had prepared a letter of complaint to Defendant Black. (*Id*.) Defendant Wenkler accepted the letter of complaint, then said, "I have to talk to my supervisor about this." (*Id*.) About fifteen to twenty minutes later, Defendant Wenkler came back to have Plaintiff sign the letter of complaint, then said, "I'm gonna walk this over personally to the director then the team is meeting about issues in your patient complaint." (*Id*., at 11–12.)

Between January 21–23, 2020, the team—which comprised of Defendants Sanchez, Miller, Martinez, Wenkler, and Carlee—with the authorization of Defendant Black, met and had Plaintiff discharged from ASH back to Corcoran State Prison ("CSP") on January 24, 2020. (*Id*., at 12.) This did not serve to advance a legitimate correctional purpose because Mr. Jiminez had been discharged from ASH back to prison on January 22, 2020. (*Id*.) Plaintiff had not yet received the necessary treatment for unresolved childhood trauma and PTSD influencing SIB. (*Id*.) Plaintiff's retaliatory removal from ASH solely for engaging in protected activity further incited Plaintiff's feelings of anger, frustration, worthlessness, and anxiety, which reinforced the urge to cut for relief. (*Id*.)

None of the other ASH patients attacked by Mr. Jiminez were barred from treatment, as none of the other victims had filed a patient complaint or wrote to Defendant Black concerning a failure to protect. (*Id.*, at 13.)

Defendants Sanchez, Miller, Martinez, Wenkler, and Carlee acted with deliberate indifference by failing to protect Plaintiff before being attacked by Mr. Jiminez. (*Id.*) After the first attack on Plaintiff, Mr. Jiminez continued to inform Defendants of his intent to attack Plaintiff again. (*Id.*) Yet Defendants failed to alert prison officials to ensure the required separation alert and/or safety concern notice were recorded to prevent Mr. Jiminez from being able to harm Plaintiff again. (*Id.*)

Between January 22, 2020 and February 25, 2020, Plaintiff suffered from— and succumbed to—urges to cut in SIB while at CSP. (*Id.*) After Plaintiff's transfer to Richard J. Donovan Correctional Facility on February 25, 2020, Plaintiff continues to suffer from—and succumbs to—SIB urges in order to cope as a direct result of discharge from ASH to the prison environment without receiving the recommended treatment for SIB. (*Id.*, at 13–14.)

Based on the foregoing, Plaintiff asserts claims pursuant to the First, Sixth, Eighth, and Fourteenth Amendments for deliberate indifference, failure to protect, and retaliatory denial of medical treatment. (*Id.*, at 2–5.) Plaintiff seeks punitive, compensatory, prospective, exemplary, and special damages, a jury trial, and all other relief the Court deems just and proper. (*Id.*, at 15.)

## III.   STANDARD OF REVIEW

Federal courts must conduct a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A. The court must identify cognizable claims and dismiss any complaint, or any portion thereof, that is: (1) frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks
///

6

monetary relief from a defendant who is immune from such relief.  28 U.S.C.
§ 1915A(b).

When screening a complaint to determine whether it fails to state a claim upon which relief can be granted, courts apply the Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") standard.  *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012).  To survive a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Although "detailed factual allegations" are not required, "an unadorned, the-defendant-unlawfully-harmed-me accusation"; "labels and conclusions"; "naked assertion[s] devoid of further factual enhancement"; and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to defeat a motion to dismiss.  *Id.* (quotations omitted).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

In reviewing a Rule 12(b)(6) motion to dismiss, courts will accept factual allegations as true and view them in the light most favorable to the plaintiff.  *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017).  Moreover, where a plaintiff is appearing *pro se*, particularly in civil rights cases, courts construe pleadings liberally and afford the plaintiff any benefit of the doubt.  *Wilhelm*, 680 F.3d at 1121.  "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."  *Starr v. Baca*, 652 F.3d 1202,

1216 (9th Cir. 2011).  However, the liberal pleading standard "applies only to a plaintiff's factual allegations." *Neitzke v. Williams,* 490 U.S. 319, 330 n.9 (1989), *superseded by statute on other grounds*, 28 U.S.C. § 1915.  Courts will not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.,* 349 F.3d 1191, 1200 (9th Cir. 2003).  In giving liberal interpretations to complaints, courts "may not supply essential elements of the claim that were not initially pled." *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

## IV.   DISCUSSION

### A.   Section 1983

Section 1983 provides a cause of action against "every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alteration in original) (quoting 42 U.S.C. § 1983).  The purpose of Section 1983 is "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt*, 504 U.S. at 161.  To state a claim under Section 1983, a plaintiff must allege: (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, the Complaint asserts claims pursuant to the First, Sixth, Eighth, and Fourteenth Amendments for deliberate indifference, failure to protect, and retaliatory denial of medical treatment.  (Complaint, at 2–5.)  Mindful of the liberal pleading standards afforded *pro se* civil rights plaintiffs, the Court examines the Complaint in light of the Eighth Amendment Cruel and Unusual Punishments

Clause for deliberate indifference to serious medical needs and failure to protect, and the First Amendment protection against retaliation.  *See Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) ("A complaint need not identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss."); *Ellis v. Brady*, Case No. 16cv1419 WQH (NLS), 2017 U.S. Dist. LEXIS 203458, at *15–16 (S.D. Cal. Dec. 8, 2017) (concluding that court could address plaintiff's claim asserted under the wrong constitutional amendment, as "it is the factual allegations, not the legal labels attached, which determine the issue").

### B.    Official Capacity Claims

A suit against a defendant in his or her individual capacity "seek[s] to impose personal liability upon a government official for actions he takes under color of state law . . . .  Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)).  The Complaint alleges that Defendants are employed at ASH (Compl., at 2–4), which is a state agency.  *See Salsberry v. Atascadero State Hosp.*, No. CV 11-05443-JVS (VBK), 2012 U.S. Dist. LEXIS 136628, at *8–9 (C.D. Cal. Aug. 1, 2012) (explaining that ASH, as a state agency, is entitled to Eleventh Amendment immunity).  As such, any official capacity claims against Defendants properly are treated as claims against the State of California.  *See Leer v. Murphy*, 844 F.2d 628, 631–32 (9th Cir. 1998) (explaining that a lawsuit against state prison officials in their official capacities was a lawsuit against the state).

California is not a "person" subject to Section 1983, and the Eleventh Amendment bars damages actions against state officials in their official capacity. *Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007); *Nat. Res. Def. Council v. Cal. DOT*, 96 F.3d 420, 421 (9th Cir. 1996) ("State immunity extends to state agencies and to state officers, who act on behalf of the state and can therefore assert

9

the state's sovereign immunity.").  There are only three exceptions to state sovereign immunity, none of which apply to the Complaint:  (1) waiver by the state, (2) abrogation by Congress, and (3) suits seeking prospective declaratory or injunctive relief.  *See Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 817 (9th Cir. 2001).

For these reasons, Plaintiff's claims against Defendants in their official capacities fail.  If Plaintiff includes claims for damages against Defendants in their official capacities in an amended complaint, such claims will be subject to dismissal.

### C.   Individual Capacity Claims

#### 1.   Eighth Amendment Deliberate Indifference to Serious Medical Needs

"[T]he treatment a prisoner receives in prison and the conditions under which he [or she] is confined are subject to scrutiny under the Eighth Amendment," which prohibits cruel and unusual punishments.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)).  "The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983."  *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–105 (1976)).  "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle*, 429 U.S. at 104).  "This includes 'both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard— deliberate indifference.'"  *Colwell*, 763 F.3d at 1066 (quoting *Snow v. McDaniel*, 681 F.3d 978, 985 (2012)).

///

a.    *Objective Prong*

"To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need." *Colwell*, 763 F.3d at 1066.  A "serious medical need" exists if "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett*, 439 F.3d at 1096 (quoting *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1059 (9th Cir. 1997) (en banc)).  Neither result is the type of "routine discomfort [that] is 'part of the penalty that criminal offenders pay for their offenses against society.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (alteration in original) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)), *overruled in part on other grounds by WMX Techs.*, 104 F.3d 1133.  "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin*, 974 F.2d at 1059–60.

Here, the Complaint alleges that:  (1) Plaintiff had unresolved childhood trauma that created "PTSD symptoms" in Plaintiff's adult life, causing a "cutting disorder"; and (2) Plaintiff does not cut with suicidal intent but rather to relieve anger, stress, anxiety, and frustration.  (Compl., at 5–6.)  Based on these allegations, the Court cannot conclude that the Complaint sufficiently alleges a serious medical need.  The Ninth Circuit has held that "a heightened suicide risk can present a serious medical need." *Simmons v. Navajo County*, 609 F.3d 1011, 1018 (9th Cir. 2010).  However, the Complaint explicitly alleges that Plaintiff lacks suicidal intent (Compl., at 5), and the Complaint does not provide sufficient detail regarding Plaintiff's medical condition and history to lead to the reasonable inference that Plaintiff was at a heightened risk for suicide or otherwise suffered from an objectively serious medical need. *See, e.g., Vivanco v. Cal. Dep't of Corr. & Rehab.*, No. 1:17-cv-00434-BAM, 2019 U.S. Dist. LEXIS 110851, at *15–16 (E.D.

Cal. July 2, 2019) (concluding that Plaintiff did not establish a serious medical need where evidence "at most, indicates a generalized risk of suicide rather than the heightened risk required to establish deliberate indifference").

> b.    *Subjective Prong*

The subjective "deliberate indifference" prong "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. "Such indifference may be manifested in two ways[:] [I]t may appear when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." *McGuckin*, 974 F.2d at 1059 (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). However, deliberate indifference is met only if the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The defendant "must purposefully ignore or fail to respond to the plaintiff's pain or possible medical need for deliberate indifference to be established." *McGuckin*, 974 F.2d at 1060. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (alteration in original) (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)). "This 'subjective approach' focuses only 'on what a defendant's mental attitude actually was.'" *Toguchi*, 391 F.3d at 1057 (quoting *Farmer*, 511 U.S. at 839).

> i.    Defendant Black

Even if the Complaint had alleged a serious medical need, there are no allegations that would support the reasonable inference that Defendant Black acted

12

with deliberate indifference.  "Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability."  *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).  "Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, '[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'"  *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (alteration in original) (quoting *Starr*, 652 F.3d at 1208).  "'Therefore, the claim that a supervisory official knew of unconstitutional conditions and 'culpable actions of his subordinates' but failed to act amounts to 'acquiescence in the unconstitutional conduct of his subordinates' and is 'sufficient to state a claim of supervisory liability.'"  *Keates*, 883 F.3d at 1243 (quoting *Starr*, 652 F.3d at 1208).

Here, the Complaint contains no allegations that Defendant Black was directly involved in any constitutional deprivations.  Rather, the Complaint contains only two allegations regarding Defendant Black:  (1) that Plaintiff prepared a letter of complaint to Defendant Black regarding the attack by Mr. Jiminez, which Plaintiff gave to Defendant Wenkler; and (2) that Plaintiff was discharged from ASH with Defendant Black's authorization.  (Compl., at 11–12.)  The Complaint contains no allegations from which it reasonably could be inferred that Defendant Black was

13

aware of any medical need of Plaintiff—serious or not.  Without knowledge that a substantial risk of serious harm existed to Plaintiff, Defendant Black could not have acted with deliberate indifference.  *See Farmer*, 511 U.S. at 837 ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.").  Even if the Complaint had contained sufficient allegations of Defendant Black's knowledge, there are no allegations from which it could be inferred that Defendant Black acquiesced in any unconstitutional conduct. The conclusory allegation that Plaintiff was discharged with Defendant Black's authorization is an "unadorned," "naked assertion" that is not sufficient to state an Eighth Amendment claim.  *See Iqbal*, 556 U.S. at 678; *see also, e.g., Mendez v. Becher*, No. C-12-4170 EMC, 2013 U.S. Dist. LEXIS 15600, at *1–2 (N.D. Cal. Feb. 5, 2013) (dismissing claims against supervisor because plaintiff failed to "make any specific allegations about how [supervisor]'s conduct resulted in plaintiff's constitutional deprivation, beyond conclusory statements regarding her approving, ratifying, condoning, encouraging, or tacitly authorizing a pattern and practice of misconduct").

### ii.     Defendants Sanchez, Miller, Martinez, Carlee

The Complaint alleges that:  (1) Plaintiff was housed at ASH in a unit supervised by Defendant Sanchez (Compl., at 6); (2) at ASH, Plaintiff was under the care of Defendants Miller, Martinez, and Wenkler (*id*.); (3) Plaintiff met with Defendants Miller, Martinez, and Wenkler on December 23, 2019 to formulate a treatment plan, which included enrolling Plaintiff in therapy groups for childhood trauma and PTSD with a four- to eight- week wait list (*id*., at 6–7); (4) Defendant Carlee spoke with Plaintiff after Mr. Jiminez attacked Plaintiff (*id*., at 9); (5) after Mr. Jiminez attacked Plaintiff, Plaintiff submitted grievances regarding the attack (*id*., at 10); and (6) between January 21–23, 2020, Defendants Sanchez, Miller,

Martinez, Wenkler, and Carlee met and had Plaintiff discharged from ASH to CSP on January 24, 2020, even though Plaintiff had not yet received treatment for unresolved childhood trauma and PTSD influencing SIB (*id*., at 12); and (7) the decision to remove Plaintiff was in retaliation for his filing of grievances (*id*.)

The Complaint does not contain sufficient allegations to satisfy the subjective prong of "deliberate indifference" as to Defendants Sanchez, Miller, Martinez, and Carlee.  Specifically as to Defendants Sanchez and Carlee, the Complaint does not allege that Plaintiff was under their medical care.  (*See generally* Compl.) Regardless, "[a] medical decision not to order [a form of treatment] . . . does not represent cruel and unusual punishment."  *Estelle*, 429 U.S. at 107–08.  To the extent Plaintiff is dissatisfied with the level of care he received, the proper claims should be negligence or malpractice, not Eighth Amendment deliberate indifference.  "[A]n inadvertent failure to provide adequate medical care," "negligence in diagnosing or treating a medical condition," and medical malpractice do not violate the Eighth Amendment.  *Estelle*, 429 U.S. at 105–06.  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

To the extent that Plaintiff's Eighth Amendment deliberate indifference claim is based on his disagreement with his discharge from ASH, such claim fails. "A difference of opinion between a prisoner-patient and prison medical authorities does not give rise to a § 1983 claim." *Franklin v. State of Oregon*, *State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).  Indeed, "'a difference of medical opinion' as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (quoting *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)).  Rather, "to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen

15

1   'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Toguchi*,

2   391 F.3d at 1058 (alteration in original) (quoting *Jackson*, 90 F.3d at 332).

3      The Complaint contains no allegations from which it reasonably could be

4   inferred that the decision by Defendants Sanchez, Miller, Martinez, and Carlee to

5   remove Plaintiff from ASH was either medically unacceptable or in conscious

6   disregard of an excessive risk to Plaintiff's health.  The Complaint's conclusory

7   allegations that Plaintiff's removal from ASH was retaliatory are insufficient to

8   state an Eighth Amendment claim.  *See Iqbal*, 556 U.S. at 678.  Indeed, there are no

9   allegations that Defendants Sanchez, Miller, Martinez, and Carlee were even aware

10  that Plaintiff had lodged grievances against them.  (*See generally* Compl.)  The

11  Complaint contains no allegations from which it reasonably could be inferred that

12  such Defendants' removal of Plaintiff from ASH was not the result of medical

13  judgment.

14

15                    iii.    Defendant Wenkler

16     In addition to the allegations asserted against Defendants Wenkler, Sanchez,

17  Miller, Martinez, and Carlee, discussed in Section IV.C.1.b.ii *supra*, the Complaint

18  contains additional allegations about Defendant Wenkler.  Specifically, the

19  Complaint alleges that Defendant Wenkler interviewed Plaintiff on January 21, 2020

20  after Mr. Jiminez attacked Plaintiff, that during such interview Defendant Wenkler

21  questioned Plaintiff about why he submitted his grievance and did not let

22  Defendants "take care of it," and also accepted Plaintiff's letter of complaint to

23  Defendant Black.  (Compl. at 11.)  Thus, unlike Defendants Sanchez, Miller,

24  Martinez, and Carlee, the Complaint alleges that Defendant Wenkler knew about

25  Plaintiff's grievance and the letter of complaint to Defendant Black.

26     Accepting all allegations as true and making all reasonable inferences in

27  Plaintiff's favor, as the Court must at this stage, the Complaint sufficiently alleges

28  that Defendant Wenkler acted with deliberate indifference.  Specifically, the

Complaint alleges that Defendant Wenkler knew that Plaintiff had submitted grievances against him and the team and expressed his disapproval of Plaintiff's grievances, which can support the conclusion that Defendant Wenkler acted with deliberate indifference.  *See Snow*, 681 F.3d at 990 (holding that evidence of an improper motive—such as denying hip replacement surgery for reasons unrelated to medical needs—can support a conclusion that a defendant acted with deliberate indifference).  Furthermore, the Complaint contains sufficient allegations from which it reasonably could be inferred that the decision to remove Plaintiff from ASH shortly after Plaintiff submitted his grievances, even though he had not yet received his prescribed therapy, was not a difference of opinion, but was either medically unacceptable under the circumstances or chosen in conscious disregard of an excessive risk to Plaintiff's health.  *See Jackson*, 90 F.3d at 332 (concluding that allegations that doctors denied plaintiff a kidney transplant, "not because of an honest medical judgment, but on account of personal animosity" stated a claim for deliberate indifference to serious medical needs).  However, because the Complaint does not satisfy the objective prong (*see* Section IV.C.1.a, *supra*), Plaintiff does not state an Eighth Amendment deliberate indifference claim against Defendant Wenkler.

For these reasons, the Complaint fails to state an Eighth Amendment claim for deliberate indifference to serious medical needs.  If Plaintiff files an amended complaint with this claim, he must correct these deficiencies or risk its dismissal.

### 2.    Eighth Amendment Failure to Protect

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates . . . ."  *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).  "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."  *Farmer*, 511 U.S. at 833 (quoting *Cortes-Quinones v.*

1   *Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). "The failure of prison
2   officials to protect inmates from attacks by other inmates may rise to the level of an
3   Eighth Amendment violation when: (1) the deprivation alleged is 'objectively,
4   sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of
5   mind,' acting with deliberate indifference." *Hearns v. Terhune*, 413 F.3d 1036,
6   1040 (9th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834).

7

8                        a.      Objective Prong

9         For an Eighth Amendment claim based on failure to prevent harm, the
10  plaintiff must allege facts sufficient to show that the risk he or she faced was
11  objectively "sufficiently serious"—that is, "that he [or she] is incarcerated under
12  conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 823.
13  "[I]n order to satisfy the objective prong, it is enough for the inmate to demonstrate
14  that he [or she] was exposed to a substantial risk of some range of serious harms; the
15  harm he actually suffered need not have been the most likely result among this range
16  of outcomes." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1076 (9th
17  Cir. 2013).

18        Here, the Complaint alleges that: (1) between July to January 2020, Mr.
19  Jiminez randomly assaulted five or six patients in Plaintiff's unit at ASH by
20  repeatedly punching their head and face from behind without warning (Compl., at 7–
21  8); (2) after Mr. Jiminez attacked Mr. McCoy in December 2019, Defendants
22  Sanchez, Miller, Martinez, Wenkler, and Carlee isolated Mr. Jiminez, administered
23  psychiatric medications, placed Mr. Jiminez on "one to one" twenty-hour
24  observation by a "PT" or registered nurse, and re-housed Mr. Jiminez in a room with
25  Plaintiff and two other ASH patients (*id*.); and (3) Mr. Jiminez told Defendants
26  Sanchez, Miller, Martinez, Wenkler, and Carlee after two separate attacks that he
27  would "keep on" attacking ASH patients in this manner (*id*.). Making all inferences
28  in Plaintiff's favor, these allegations—that Plaintiff was housed in the same room

                                            18

with an inmate with a known history of recent repeated attacks against random patients, who repeatedly asserts that he will continue such attacks—plausibly state an objectively sufficiently serious risk of harm. *See, e.g., Fitzpatrick v. Las Vegas Metro. Police Dep't*, No.: 2:17-cv-01886-JAD-BNW, 2020 U.S. Dist. LEXIS 19852, at *33 (D. Nev. Feb. 3, 2020) ("There may be a substantial risk of harm to an inmate where the prison double-cells an inmate with a history of attacking other cellmates with a non-violent inmate . . . .").

### b.    Subjective Prong

"To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 823.  "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991)).  Deliberate indifference is met only if the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 834.  "Deliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Hearns*, 413 F.3d at 1040 (alterations in original) (citing *Farmer*, 511 U.S. at 835).

### i.    *Defendant Black*

The Complaint fails to allege an Eighth Amendment failure to protect claim against Defendant Black, as there are no allegations from which it can be inferred that Defendant Black was aware of and disregarded the risk to Plaintiff's safety.  *See Farmer*, 511 U.S. at 837 (requiring awareness of the substantial risk of harm for liability under the Eighth Amendment); *see also Taylor v. Barkes*, 135 S. Ct. 2042

(2015) ("Eighth Amendment liability requires actual awareness of risk.")  The Complaint alleges that Plaintiff wrote a letter about the attack to Defendant Black, but not until *after* Mr. Jiminez attacked Plaintiff.  (Compl., at 11.)  To the extent the Complaint attempts to impose supervisory liability upon Defendant Black for a failure to protect, there is no vicarious liability under Section 1983 (*see* Section IV.C.1.b.i, *supra*), and there no allegations from which it reasonably could be inferred that Defendant Black knew of the culpable actions of his subordinates but failed to act.  (*See generally* Compl.)  Plaintiff's Eighth Amendment failure to protect claim against Defendant Black fails.

ii.   *Defendants Sanchez, Miller, Martinez, Wenkler, Carlee*

The Complaint alleges that:  (1) after Mr. Jimenez attacked Mr. McCoy in December 2019, Defendants Sanchez, Miller, Martinez, Wenkler, and Carlee isolated Mr. Jiminez, administered psychiatric medications, placed Mr. Jiminez on "one to one" twenty-hour observation by a "PT" or registered nurse, and re-housed Mr. Jiminez in a room with Plaintiff and two other ASH patients (Compl., at 7–8); (2) the "whole time" Mr. Jiminez was in isolation, he yelled to Defendants Sanchez, Miller, Martinez, Wenkler, and Carlee of his intent to "keep on" attacking ASH patients in the same manner; (3) Mr. Jiminez attacked ASH patient Mr. Contrell on January 14, 2020 (*id*., at 8); (4) while Mr. Jiminez was in isolation after attacking Mr. Contrell, Mr. Jiminez again "made clear" to Defendants Sanchez, Miller, Martinez, Wenkler, and Carlee of his intent to "keep on" attacking ASH patients in (*id*.); and (5) after Mr. Jimenez attacked Plaintiff, Defendant Carlee told Plaintiff: (a) "I'm so sorry you were assaulted, [sic] we had no other place to put him so we housed him in your dorm because you look as if you can handle yourself." (*id*., at 9), and (b) "I don't know if you've heard but Jiminez has attacked several other patients the same way.  Your [sic] like the fifth or sixth [sic] one, but we didn't expect him

1  to try his M.O. on you because of your size.  We've been waiting on CDCR

2  transportation to come take him back to prison but we don't control the bus

3  schedule." (*id.*, at 9–10).

4    Construing the allegations in Plaintiff's favor, these allegations potentially are

5  sufficient to state an Eighth Amendment failure to protect claim against Defendants

6  Sanchez, Miller, Martinez, Wenkler, and Carlee.  Specifically, these allegations

7  plausibly allege that Defendants Sanchez, Miller, Martinez, Wenkler, and Carlee

8  both knew of and disregarded an excessive risk to Plaintiff's safety by housing a

9  known-violent inmate with a recent history of repeated attacks in a room with

10  Plaintiff.  *See Farmer*, 511 U.S. at 834.

11

12    For these reasons, the Complaint states an Eighth Amendment failure to

13  protect claim against Defendants Sanchez, Miller, Martinez, Wenkler, and Carlee,

14  but not against Defendant Black.  If Plaintiff files an amended complaint with an

15  Eighth Amendment failure to protect claim against Defendant Black, he must correct

16  these deficiencies or risk dismissal of such claim.

17

18       3. First Amendment Retaliation

19    Prisoners have a First Amendment right to file prison grievances, and a First

20  Amendment right to be free from retaliation for doing so.  *Brodheim v. Cry*, 584

21  F.3d 1262, 1269 (9th Cir. 2009).  "Within the prison context, a viable claim of First

22  Amendment retaliation entails five basic elements:  (1) An assertion that a state actor

23  took some adverse action against an inmate (2) because of (3) that prisoner's

24  protected conduct, and that such action (4) chilled the inmate's exercise of his First

25  Amendment rights, and (5) the action did not reasonably advance a legitimate

26  correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

27  "[M]ere speculation that defendants acted out of retaliation is not sufficient." *Wood*

28  *v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014).  Because direct evidence of retaliatory

1   intent rarely can be pleaded in a complaint, circumstantial evidence—such as

2   suspect timing, inconsistent determinations based on the same evidence, and oral

3   statements—may suffice to infer retaliatory intent. *See Bruce v. Ylst*, 351 F.3d 1283,

4   1288 (9th Cir. 2003). A plaintiff bears the initial burden of showing that the

5   exercise of his First Amendment rights was a "substantial" or "motivating" factor

6   behind the defendant's conduct. *Mt. Healthy City School Dist. v. Doyle*, 429 U.S.

7   274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir.

8   1989).

9

10                          a.    *Defendant Black*

11          The Complaint alleges that: (1) after Mr. Jimenez attacked Plaintiff, Plaintiff

12   prepared a letter of complaint to Defendant Black, which Plaintiff gave to Defendant

13   Wenkler; and (2) Plaintiff was discharged from ASH with Defendant Black's

14   authorization. (Compl., at 11–12.) These allegations are not sufficient to infer that

15   Defendant Black was directly involved in any allegedly unconstitutional conduct or

16   had knowledge of the alleged deprivations *and* acquiesced in them. *See Keates*, 883

17   F.3d at 1243. The conclusory allegation that Plaintiff was discharged with

18   Defendant Black's authorization is an "unadorned," "naked assertion" and is not

19   sufficient to state any cognizable claims against Defendant Black. *See Iqbal*, 556

20   U.S. at 678; *see also, e.g., Mendez v. Becher*, No. C-12-4170 EMC, 2013 U.S. Dist.

21   LEXIS 15600, at *1–2 (N.D. Cal. Feb. 5, 2013) (dismissing claims against police

22   chief because plaintiff failed to "make any specific allegations about how Chief

23   Becher's conduct resulted in plaintiff's constitutional deprivation, beyond

24   conclusory statements regarding her approving, ratifying, condoning, encouraging,

25   or tacitly authorizing a pattern and practice of misconduct"). Mere speculation that

26   Defendant Black acted out of retaliation is not sufficient. *Yordy*, 753 F.3d at 904.

27   The only allegations that vaguely suggest retaliation are temporal proximity between

28   Plaintiff's submission of his letter of complaint to Defendant Black and Plaintiff's

1   removal from ASH, which can be circumstantial evidence of retaliatory motive.  *See*

2   *Ylst*, 351 F.3d at 1288–89.  However, a retaliation claim cannot rest solely on the

3   "logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because

4   of this.'"  *Huskey v. City of San Jose*, 204 F.3d 893, 899 (quoting *Choe v. INS*, 11

5   F.3d 925, 938 (9th Cir. 1993)).  The Complaint does not contain sufficient factual

6   allegations that lead to the reasonable inference that Plaintiff's exercise of his First

7   Amendment rights was connected to any retaliatory action by Defendant Black.

8

9                          b.    *Defendant Wenkler*

10      Here, the Complaint alleges that:  (1) Defendant Wenkler interviewed Plaintiff

11  after Plaintiff submitted a grievance regarding Mr. Jiminez's attack; (2) Defendant

12  Wenkler asked Plaintiff why he had to file a complaint; (3) Plaintiff gave Defendant

13  Wenkler a complaint letter to give to Defendant Black; and (4) a few days later,

14  Plaintiff's treatment team—which included Defendant Wenkler—discharged

15  Plaintiff from ASH, even though Plaintiff had not yet received the treatment they

16  had prescribed for him before he submitted the grievances.  (Compl., at 10–12.)

17  These allegations potentially are sufficient to state a First Amendment retaliation

18  claim because: (1) Plaintiff alleged that he engaged in a protected action by filing a

19  grievance and submitting a complaint letter to Defendant Black; (2) Plaintiff alleges

20  that Defendant Wenkler took an adverse action against him by discharging him from

21  ASH; (3) Plaintiff alleges a causal connection between (1) and (2): that the

22  retaliatory actions took place shortly after, and in retaliation for, Plaintiff's

23  submission of a grievance and complaint letter; (4) it reasonably could be inferred

24  that the denial of medical care would chill or silence a person of ordinary firmness;

25  and (5) it reasonably could be inferred that retaliatory denial of medical care did not

26  advance legitimate penological goals.  *See, e.g., Chatman v. Medina*, No. 2:11-CV-

27  0681-MCE-CMK-P, 2014 U.S. Dist. LEXIS 38595, at *42–43 (E.D. Cal. Mar. 21,

28  ///

23

1    2014) (holding that allegations that plaintiff was denied proper medical care after

2    filing a grievance potentially stated a First Amendment retaliation claim).

3

4                    c.    *Defendants Sanchez, Miller, Martinez, Wenkler, Carlee*

5         With respect to Defendants Sanchez, Miller, Martinez, and Carlee, Plaintiff's

6    allegations of retaliation are wholly conclusory and do not set forth any specific

7    facts other than the word "retaliation" to support his First Amendment claims.

8    There are no allegations from which it reasonably can be inferred that these

9    Defendants knew that Plaintiff had filed any grievances.  *See Wood*, 753 F.3d at 905

10   (concluding that there was no retaliation claim where there was no indication that

11   defendants knew about the earlier lawsuit or that claimed actions were in retaliation

12   for the earlier suit).  Knowledge is critical because Defendants could not have acted

13   "in retaliation for—or because of—something about which [they] had no

14   knowledge."  *Cejas v. Paramo*, No. 14-CV-1923-WQH (WVG), 2017 U.S. Dist.

15   LEXIS 47106, at *18, at *6 (S.D. Cal. Mar. 28, 2017); *see Pratt v. Rowland*, 65

16   F.3d 802, 808 (9th Cir. 1995) (concluding that inmate failed to establish retaliation

17   claim where there was no evidence that prison officials knew of the conduct giving

18   rise to the alleged retaliatory action).  The Complaint contains no factual allegations

19   from which it can be inferred that a retaliatory motive was the "substantial" and

20   "motivating" factor behind these Defendant's decisions to remove Plaintiff from

21   ASH.

22

23        For these reasons, the Complaint states a First Amendment retaliation claim

24   solely against Defendant Wenkler, but no other Defendant.  If Plaintiff files an

25   amended complaint with First Amendment retaliation claims against anyone other

26   than Defendant Wenkler, he must correct these deficiencies or risk dismissal of such

27   claims.

28   ///

24

**V.    CONCLUSION**

For the reasons stated above, the Court **DISMISSES** the Complaint **WITH LEAVE TO AMEND**.  Plaintiff may have another opportunity to amend and cure the deficiencies given his *pro se* status.  Plaintiff is **ORDERED** to, within sixty days after the date of this Order, either:  (1) file a FAC, or (2) advise the Court that Plaintiff does not intend to pursue this lawsuit further and will not file a FAC.

The FAC must cure the pleading defects discussed above and shall be complete in itself without reference to the Complaint.  *See* L.R. 15-2 ("Every amended pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits.  The amended pleading shall not refer to the prior, superseding pleading.").  This means that Plaintiff must allege and plead any viable claims in the FAC again.  Plaintiff shall not include new Defendants or new allegations that are not reasonably related to the claims asserted in the Complaint.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims.  Plaintiff is advised that pursuant to Rule 8, all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief."  **Plaintiff strongly is encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.**  In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims.  Plaintiff strongly is encouraged to keep his statements concise and to omit irrelevant details.  It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation.  Plaintiff also is advised to omit any claims for which he lacks a sufficient factual basis.

**The Court explicitly cautions Plaintiff that failure to timely file a FAC, or timely advise the Court that Plaintiff does not intend to file a FAC, will result in a recommendation that this action be dismissed for failure to prosecute and/or**

1  **failure to comply with court orders pursuant to Federal Rule of Civil Procedure**
2  **41(b).**

3        Plaintiff is not required to file an amended complaint, especially since a
4  complaint dismissed for failure to state a claim without leave to amend may count as
5  a strike under 28 U.S.C. § 1915(g).  Instead, Plaintiff may request voluntary
6  dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a).  A Notice
7  of Dismissal form is attached for Plaintiff's convenience.

8        Plaintiff is advised that this Court's determination herein that the allegations
9  in the Complaint are insufficient to state a particular claim should not be seen as
10  dispositive of the claim.  Accordingly, although the undersigned Magistrate Judge
11  believes Plaintiff has failed to plead sufficient factual matter in the pleading,
12  accepted as true, to state a claim for relief that is plausible on its face, Plaintiff is not
13  required to omit any claim or Defendant in order to pursue this action.  However, if
14  Plaintiff decides to pursue a claim in an amended complaint that the undersigned
15  previously found to be insufficient, then pursuant to 28 U.S.C. § 636, the
16  undersigned ultimately may submit to the assigned District Judge a recommendation
17  that such claim may be dismissed with prejudice for failure to state a claim, subject
18  to Plaintiff's right at that time to file objections.  *See* Fed. R. Civ. P. 72(b); C.D. Cal.
19  L.R. 72-3.

20        IT IS SO ORDERED.

21

22  DATED:  August 25, 2020                    _____
23                                                            MARIA A. AUDERO
                                                      UNITED STATES MAGISTRATE JUDGE
24

25  Attachments
26  Form Civil Rights Complaint (CV-66)
27  Form Notice of Dismissal
28